JEANNE JOHNSON, Plaintiff-Appellant, v. MAKI AND ASSOCIATES, INC., *et al.*, Defendants-Appellees.

Second District    No. 2—96—0533

Opinion filed July 10, 1997.

Anthony S. DiVincenzo, of Campbell & DiVincenzo, of Chicago, for appellant.

Douglas C. Crone and John W. Carver, both of Tribler, Orpett, Palmer & Crone, P.C., of Chicago, for appellees.

PRESIDING JUSTICE GEIGER delivered the opinion of the court:

The plaintiff, Jeanne Johnson, appeals from the April 3, 1996, order of the circuit court of Lake County dismissing her complaint for breach of fiduciary duty against the defendants, Maki & Associates, Inc., and Larry Desmond (collectively referred to as Maki). The trial court dismissed her complaint after finding that she had signed a

valid release which relinquished all her claims against Maki. On appeal, she argues (1) that the trial court erred in finding that the release was valid; and (2) that the trial court erred in finding that the release had not been procured by fraud. We reverse and remand.

Our review of the record reveals the following facts. On October 28, 1994, the plaintiff executed a listing agreement with Maki to sell her home in Beach Park. On December 31, 1994, the plaintiff entered into a real estate contract with Tim Ganley and Virginia Phillips (the buyers) to sell her home. The buyers deposited $2,000 in earnest money, which was held by Maki in an escrow account. The real estate contract provided that Maki would not disburse the earnest money unless it was provided a written demand to do so by both the buyers and the seller.

Prior to closing, the plaintiff and the buyers could not reach agreement over which repairs the plaintiff would make to the home. On January 13, 1995, the buyers declared that they would not go through with the purchase and requested the immediate return of the earnest money. On May 25, 1995, after the plaintiff had refused to return the earnest money, the buyers filed suit. After several months of litigation, the plaintiff agreed to return the earnest money, and the buyers dismissed their suit.

On October 13, 1995, the plaintiff sent a letter to Maki directing it to return the earnest money to the buyers. Maki refused, demanding that the plaintiff sign a document entitled "Cancellation Agreement For Contract to Purchase Real Estate" (the cancellation agreement) before it would return the earnest money. The cancellation agreement contained a general release provision which provided as follows:

> "The Buyer and Seller shall indemnify, save, and hold harmless Broker and Broker's agents from all claims, litigations, judgments, and costs arising from the cancellation of the Contract."

On October 13, 1995, the plaintiff signed the cancellation agreement.

On December 29, 1995, the plaintiff filed suit against Maki alleging that Maki had breached its fiduciary duty to her (1) by making false representations regarding the buyers' ability to obtain financing; and (2) by misrepresenting the operation and effect of the home inspection contingency. The plaintiff also alleged that Maki had breached its duty of loyalty to her by instructing her to have her tenants vacate the home even though Maki should have known that the closing would not occur. The plaintiff alleged that, as a result of Maki's conduct, she lost rents, incurred unnecessary repair and inspection expenses, and had to pay attorney fees in connection with the aborted sale.

On February 28, 1996, Maki filed a motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—619 (West 1994)). Maki argued that the plaintiff's action was barred by the release contained in the cancellation agreement. The plaintiff responded that the release was invalid because it was not supported by consideration and because it had been procured through fraud.

On April 3, 1996, the trial court granted Maki's motion and dismissed the plaintiff's action with prejudice. The trial court found that the release in the cancellation agreement was valid and that the plaintiff had not demonstrated that the release was otherwise unenforceable. The plaintiff filed a timely notice of appeal.

On appeal, the plaintiff argues that the trial court erred in granting Maki's motion to dismiss. The plaintiff argues that the release, like any other contract, requires consideration to be enforceable. She contends that, because she received no consideration from Maki in return for her promise not to sue, the release contained in the cancellation agreement is invalid.

■ In determining the propriety of a motion to dismiss, the trial court must construe all pleadings and supporting documents in the light most favorable to the nonmoving party. *Bishop v. Lakeland Animal Hospital, P.C.*, 268 Ill. App. 3d 114, 116 (1994). The trial court should grant the motion only if the plaintiff can prove no set of facts that would support a cause of action. *Bishop*, 268 Ill. App. 3d at 116. As this process does not require the trial court to weigh facts or determine credibility, the appellate court is not required to defer to the trial court's determination and may review the matter *de novo*. *Bishop*, 268 Ill. App. 3d at 116.

■ A release is a contract whereby one party abandons claims against another, and its interpretation is governed by the principles that govern contract law. *Farm Credit Bank v. Whitlock*, 144 Ill. 2d 440, 447 (1991); *Central Production Credit Ass'n v. Hans*, 189 Ill. App. 3d 889, 899 (1989). Our supreme court has held that a release, like any other contract, requires consideration to be valid. *Toffenetti v. Mellor*, 323 Ill. 143, 148 (1926). The supreme court explained this requirement as follows:

> "A valid release must be based upon a consideration before it can be efficacious in a court of law. Where the promisor receives no benefit and the promisee suffers no detriment the whole transaction is in its nature a *nudum pactum*." *Toffenetti*, 323 Ill. at 148.

See also *White v. Village of Homewood*, 256 Ill. App. 3d 354, 356 (1993).

■ In reliance upon *Aqua-Aerobic Systems, Inc. v. Ravitts*, 166 Ill.

App. 3d 168, 172 (1988), Maki contends that a release does not require consideration to be valid. In *Aqua-Aerobic*, the parties entered into an employment termination agreement which included a provision releasing the defendant from a covenant not to compete. 166 Ill. App. 3d at 169. The defendant's former employer later sued to enforce the covenant not to compete, alleging that the release was invalid because it lacked consideration. *Aqua-Aerobic*, 166 Ill. App. 3d at 172. The trial court dismissed the action in reliance on the release. *Aqua-Aerobic*, 166 Ill. App. 3d at 170. On appeal, this court affirmed the trial court and held that a release from a restrictive covenant need not be supported by consideration. *Aqua-Aerobic*, 166 Ill. App. 3d at 172, 173. We explained our holding as follows:

> "[W]e are persuaded that a requirement of consideration for releases of restrictive covenants is inappropriate. Courts favor fair competition in business. [Citation.] Thus, restrictive covenants have long been disfavored by the courts. [Citation.] Because the courts disfavor restraint covenants, we are of the opinion that disentanglement from them should be easily obtainable, especially where both parties to the agreement desire the abolition of such promise. Where, as here, the employer has given a written release we can see no reason to make consideration a requirement of that release. We therefore hold that a written release of a promise not to compete is valid absent consideration." *Aqua-Aerobic*, 166 Ill. App. 3d at 172.

We find *Aqua-Aerobic* to be distinguishable from the instant case. In *Aqua-Aerobic*, the release at issue was a release from a restrictive covenant. 166 Ill. App. 3d at 169. Because restrictive covenants are disfavored by law, we determined that it would be inappropriate to require consideration for releases from such agreements. *Aqua-Aerobic*, 166 Ill. App. 3d at 172. In the instant case, however, the plaintiff signed a release that effectively relinquished her right to sue Maki for any reason. Not only does the release protect Maki from liability for releasing the escrow money, but it also insulates Maki from any claim arising out of the cancellation of the contract. The right to sue is significant and cannot be released absent valuable consideration given in return. See *Toffenetti*, 323 Ill. at 148; *White*, 256 Ill. App. 3d at 356-57. We therefore hold that the release contained in the cancellation agreement required consideration to be valid.

We now turn to the issue of whether Maki provided consideration in return for the plaintiff's release. The plaintiff contends that Maki was acting as an escrowee and therefore had a preexisting legal obligation to return the earnest money to the buyers at her directive.

She concludes that this preexisting legal obligation cannot constitute consideration for the release. Maki argues that the cancellation agreement had been made part of the underlying real estate contract and that, therefore, the release was supported by the same consideration as the rest of the contract.

■ Consideration for a contract consists either of some right, interest, profit, or benefit accruing to one party or some forbearance, detriment, loss of responsibility given, suffered, or undertaken by the other. *De Fontaine v. Passalino*, 222 Ill. App. 3d 1018, 1028 (1991). The preexisting duty rule provides that where a party does what it is already legally obligated to do, there is no consideration because there has been no detriment. *Gavery v. McMahon & Elliott*, 283 Ill. App. 3d 484, 489 (1996).

■ ■ An escrowee has been described as a "trustee" of both the party making the deposit of property and the party for whose benefit it is made and, therefore, has a duty to act impartially toward all parties. *Meyers v. Rockford Systems, Inc.*, 254 Ill. App. 3d 56, 64 (1993). Like a trustee, the escrowee owes a fiduciary duty to act only in accordance with the terms of the escrow instructions. *Meyers*, 254 Ill. App. 3d at 64. Where money is deposited in escrow in pursuit of a contract and no enforceable contract is reached, the escrowee must return the money to the buyer or depositor. *Columbia Homes, Inc. v. Sirois*, 115 Ill. App. 3d 651, 653 (1983). Further, any transaction between a fiduciary and its principal, such as a release, is subjected to the closest scrutiny by the courts. *McCormick v. McCormick*, 118 Ill. App. 3d 455, 466 (1983). Our review of the record indicates that Maki was acting as an escrowee on behalf of the plaintiff and therefore owed a fiduciary duty to act in accordance with the terms of the escrow instructions.

The underlying real estate contract provided as follows:

> "There shall be no disbursement of earnest money unless Escrowee has been provided written agreement thereto from Buyer and Seller."

Pursuant to these instructions, the plaintiff and buyers needed only to tender a written request to Maki in order for the earnest money to be disbursed. We find that the obligation to release the escrow money was a preexisting legal duty under the original real estate contract and could not constitute consideration for the release contained in the cancellation agreement. See *Columbia Homes, Inc.*, 115 Ill. App. 3d at 653. Moreover, we do not believe that the consideration for the release flowed from the original contract. A review of the real estate contract indicates that such a release goes beyond the scope of the bargain agreed to between the plaintiff and Maki. Nowhere in the

original contract does the plaintiff relinquish her rights to sue Maki. Therefore, the original real estate contract could not have been the basis for providing consideration for the release.

For these reasons, we find that the release in the cancellation agreement lacked consideration and was therefore invalid. Consequently, we hold that the trial court erred in dismissing the plaintiff's action. As our resolution of this issue is dispositive, we need not address the plaintiff's remaining argument on appeal.

For the foregoing reasons, the judgment of the circuit court of Lake County dismissing the plaintiff's action is reversed, and the cause is remanded for further proceedings consistent with this decision.

Reversed and remanded.

RATHJE and HUTCHINSON, JJ., concur.